# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LISA L. LEARY,** | : | |
| **Plaintiff,** | : | CIVIL ACTION NO. 3:08-1720 |
| v. | : | (MUNLEY, D.J.) |
| | | (MANNION, M.J.) |
| **JOSEPH J. RUSCAVAGE; MARK A. NENICHKA; JOSEPH C. JUNE, Jr.; MICHAEL A. PERHACH; THOMAS J. SEMANEK, JR.; SWOYERSVILLE BOROUGH ZONING HEARING BOARD; and SWOYERSVILLE BOROUGH,** | : : : : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION[1]

Presently before the Court is the Defendants' Motion to Dismiss the complaint (the "Motion"), (Doc. No. 15). The Motion has been briefed. *See* Doc. No. 19 (the defendants' "Opening Brief"); Doc. No. 29 (plaintiff's "Opposition Brief"); Doc. No. 31 (defendants' "Reply Brief"); *see also* Doc. No. 18 (plaintiff's "Answer of Plaintiff to Motion to Dismiss of Defendants").

After having considered the parties' submissions, federal and state constitutional law, statutory law, and case law, and other persuasive authority,

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

and for the reasons elaborated below, the Court will **RECOMMEND GRANTING in part**, and **DENYING in part** the motion .

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Although some elements of the factual background of this case appear to be disputed, there seems to be agreement with regard to its procedural background. For the purposes of evaluating defendants' motion for dismissal under Rule 12(b)(6), the Court assumes as true all well-pled allegations in the complaint.

Plaintiff's parents, Joseph and Deborah Leary, purchased a piece of real property at 488 Church Street (the "488 Property"), Swoyersville, Pennsylvania on July 17, 1999. Thereafter, Joseph Leary spent in excess of $50,000 in constructing and improving the property, i.e., to be used as a beauty salon by plaintiff, Lisa Leary. Between August 10, 1999 and September 3, 2003, Joseph Leary paid for and received a variety of permits from defendant, Swoyersville Borough, permitting construction and improvement of the property as a beauty salon. Both prior to plaintiff's occupancy and while owned by the plaintiff's parents, the 488 Property was used as a commercial business – first as floral shop prior to purchase by the

plaintiff's parents, and, thereafter, by Joseph Leary for his construction company, and, finally, by plaintiff as a beauty salon. The commercial use of the property was never abandoned. After plaintiff had occupied the 488 Property and operated her beauty salon there for some six months, all without objection from defendants, defendant Joseph J. Ruscavage, the borough zoning officer, sent an enforcement notice, dated August 29, 2007, to plaintiff ordering her to cease and desist her business operations. Plaintiff argues that the notice failed to comply with any number of provisions of the Pennsylvania Municipalities Planning Code, including the fact that the notice was not directed to the 488 Property's owner(s) of record, but only to plaintiff, Lisa Leary. *See* 53 Pa. C.S. §10616.1.

Plaintiff appealed the zoning officer's decision to the Swoyersville Borough Hearing Board (the "Board"), also a defendant, on September 21, 2007. The hearing was heard on October 18, 2007. At the hearing, plaintiff asserted that the zoning officer's notice failed to comply with the governing statute, *id.*, that the more than $50,000 worth of improvements on the property were authorized by permits (as supported by correspondence from the prior zoning officer), and that the 488 Property had been used continuously for commercial purposes before it was purchased by the Leary's and

continuously thereafter until the August 29, 2007 date of the enforcement notice.

At the hearing Ruscavage testified that prior to the hearing, he had consulted with the Board's attorney, Frank J. Artiz, Esq., in regard to drafting and composing the enforcement notice. Plaintiff argues that these contacts between the zoning officer and the Board's attorney are forbidden ex parte contacts, precluded by state statute. Furthermore, plaintiff alleges that at the hearing Artiz conducted the direct examination of Ruscavage, and he, Artiz, made objections during Ruscavage's cross-examination, and he also ruled upon those objections.

After the presentation and conclusion of testimony and evidence, the Board adjourned without rendering a decision. Thereafter Artiz directed correspondence to plaintiff seeking, on behalf of defendant Mark A. Nenichka, chairman of the Board, additional documentation, including plaintiff's "business licences" and "cosmetology licence," and indicated that should plaintiff not provide the documents sought, then a subpoena would follow. Plaintiff argues that these efforts by Artiz and Nenichka were contrary to law.

On December 19, 2007, the Board reconvened and issued a decision supporting the enforcement notice. Plaintiff did not seek any appeal of the

Board's decision in state court.

Plaintiff asserts that the defendants' actions were arbitrary, capricious, and contrary to law, shock the conscience, and in violation of plaintiff's Fourteenth Amendment due process rights, asserted under 42 U.S.C. § 1983. Plaintiff seeks compensatory damages against all defendants, and punitive damages against the individual defendants, along with interest, costs, reasonable attorney's fees, and other such relief as the Court deems appropriate.

In their Motion, defendants assert a variety of defenses, including: (1) plaintiff's procedural due process claim fails because Pennsylvania law provides state judicial review in regard to the Board's decision, an avenue of relief not pursued by the plaintiff; (2) the alleged misconduct fails as a substantive due process claim because the alleged conduct does not shock the conscience; (3) the individual defendants – the members of the Board and the zoning officer – are entitled to absolute immunity for performing quasi-judicial functions; and (4) punitive damages are not recoverable against a municipal defendant.

## II. LEGAL STANDARD

The defendants' Motion is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and

6

quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *[Sands v. McCormick](https://...)*, [502 F.3d 263 (3d Cir. 2007)](https://...). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *[Pension Benefit Guar. Corp. v. White Consol. Indus.](https://...)*, [998 F.2d 1192, 1196 (3d Cir. 1993)](https://...). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *[Pryor v. Nat'l Collegiate Athletic Ass'n](https://...)*, [288 F.3d 548, 560 (3d Cir. 2002)](https://...).

### III. ANALYSIS

This report turns to each of defendants' defenses in turn.

#### A. Punitive Damages

Defendants argue that punitive damages are not recoverable against the municipal defendant, the Swoyersville Borough or its Board in a Section 1983 action. However, since the plaintiff has only expressly sought punitive

7

damages against the individual defendants, it appears there is no need for the court to address this argument. *See* Complaint at 16, (Doc. No. 1 at 16); *see also* Doc. No. 18 at 4. The Court will therefore recommend dismissing defendants' request for this relief as unnecessary.

**B.     Immunity For The Board's Members And The Zoning Officer**

In regard to plaintiff's Section 1983 claim seeking monetary relief against the individual defendants, the Board's members and the zoning officer, in their personal capacities, defendants assert the defense of absolute judicial immunity.

> The law has long recognized a broad absolute judicial immunity. A judge does not lose absolute immunity simply because he acted in excess of jurisdiction; absolute immunity is lost only when the judge either did not perform a judicial act or when the judge acted in clear absence of all jurisdiction. A judge who acts in excess of jurisdiction, or without personal jurisdiction, or who make grave procedural errors, or who acts maliciously or corruptly or in excess of authority, does not necessarily act in the clear absence of all jurisdiction. To determine whether the judge performed a "judicial act," courts consider whether the judge engaged in action normally performed by a judge, and whether the parties dealt with the judge in her judicial capacity.

MARTIN A. SCHWARTZ & KATHRYN URBONYA, SECTION 1983 LITIGATION, at 132 (2008) (citations and quotation marks omitted). As the Third Circuit has explained:

> We must engage in a two-part inquiry to determine whether

judicial immunity is applicable. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. With respect to the first inquiry, the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity. Our task is to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges, such as administrative acts.

*Gallas v. Supreme Court of Penn.*, 211 F.3d 760, 768-69 (3d Cir. 2000) (citations and quotation marks omitted).

To determine whether absolute judicial immunity extends to nonjudicial officers, i.e., the individual defendants, courts use a functional approach.

Absolute immunity flows not from rank or title or location within the Government, but from the nature of the responsibilities of the individual official. [The Supreme Court has identified] the following factors, among others, as characteristic of the judicial process and to be considered in determining absolute as contrasted with qualified immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 201-02 (1985) (citations and quotation marks omitted); *see also Lonzetta Truck. & Excavating Co. v. Schan,* 144

9

Fed. Appx. 206, 211 (3d Cir. 2005 ) (quoting *Cleavinger, supra*, approvingly); Opening Brief at 11-13 (citing *Lonzetta, supra*, approvingly); Opposition Brief at 14-15 (same).

Generally, both parties agree that as an abstract matter zoning board members, although not traditional judicial officers, may claim absolute judicial immunity based on the functional approach discussed above. *Id*. More specifically, defendants argue that *Lonzetta* established that "members of a zoning board who are ruling on a zoning board permit for a particular piece of property are performing a quasi-judicial function," Opening Brief at 11, and that the individual defendants here were doing just that: "ruling on a zoning permit regarding Plaintiff's property." *Id*. at 13. Plaintiff, by contrast, argues that "deliberate, intentional, and willful acts of the Members of the Zoning Board violated the Pennsylvania Municipalities Planning Code," Opposition Brief at 14, that the Board members communicated with zoning officer in violation of state statute, for example, by directing the zoning officer to initiate an enforcement action against the plaintiff, *id*. at 15, and that such actions are not entitled to absolute judicial immunity, *id.*

The (alleged) fact that Board members engaged in deliberate, intentional, or wilful conduct in violation of state statute does not, without

10

more, remove the protection of absolute judicial immunity. Board members lose that protection only if the complained of action was non-judicial in character, or, if judicial in character, "taken in [a] complete absence of *all* jurisdiction." *Gallas*, 211 F.3d at 768-69 (emphasis added). Thus, intent is not determinative. Indeed, as the Supreme Court explained even "malicious[]" and "corrupt[]" acts may be protected by judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *see also Forrester v. White*, 484 U.S. 219, 227 (1988) ("[An act] does not become less judicial by virtue of an allegation of malice or corruption of motive."). The (alleged) fact that actions taken by the zoning officer and board "violated the Pennsylvania Municipalities Planning Code," even if proven, would not establish that the Board or its zoning officer acted absent "all" jurisdiction. The zoning officer had the power to initiate enforcement proceedings. The notice used may very well have been inconsistent with the statutory requirements, but incorrect notice does not establish a complete absence of jurisdiction. Moreover, even if the state statute required that notice must be sent to the owner of record and that such owner be named in the notice – plaintiff has not illustrated any harm accruing to *her* from that failure. Finally the (alleged) *ex parte* contacts amongst the board, its attorney, and zoning officer are just other procedural

11

errors. *Cf.* [Forrester, 484 U.S. at 227](#) (noting that informal, irregular, erroneous, and *ex parte* conduct may still be judicial in character).

Absolute immunity does not accrue to a defendant based solely on his position in the government. It accrues to defendants engaged in "judicial conduct," but it only insulates against monetary relief actions taken in a "judicial capacity." Thus, as an abstract matter, members of the Board are protected in regard to their zoning decisions taken through board action, but not every action complained of by plaintiff in this action relates to such Board action. For example, the zoning officer was not "ruling on a permit," rather plaintiff alleges that the zoning officer sent her a cease and desist order as a result of his "seeing an advertisement in the *Citizens' Voice*, [thereby] unilaterally direct[ing] correspondence to Plaintiff." Complaint at 7. (Doc. No. 1 at 7.) *But see id*. at 10 (alleging that the zoning officer sent the notice after consulting with the Board's solicitor, in apparent contradiction to the prior claim that the zoning officer acted unilaterally). To be clear, *Lonzetta* suggests that absolute judicial immunity may extend to zoning officers, as opposed to just board members. *See [Lonzetta,* 144 Fed. Appx. at 211-12](#) ("If, however, the District Court finds that there is some conduct that falls outside th[e] [quasi]judicial function, the zoning officials [including the individual zoning

12

officer] should proceed to trial as to that conduct."). But here, defendants' argument, as developed in their opening brief – although seeking to protect the zoning officer – only applies the relevant law to the Board member defendants and nowhere discusses what particular acts of the zoning officer are allegedly protected by absolute judicial immunity. In light of the foregoing, there is insufficient evidence at this time to decide this issue and the motion should be denied at this stage of the litigation. *See, e.g.*, *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.), *cert. denied*, 502 U.S. 845 (1991) (noting that "perfunctory and undeveloped arguments ... are waived); *cf*. *Conroy v. Leone*, No. 06-4929, 2009 WL 597592, at \*4 n.5 (3d Cir. Mar. 9, 2009) ("[The movant's] one conclusory sentence in his brief that apparently suggests ... that his witnesses suffered prejudice. We find this undeveloped argument has been waived.") (NOT PRECEDENTIAL).

Thus, the Court will recommend granting absolute judicial immunity to the Board members in regard to their conduct at the hearing in which plaintiff sought an appeal of the zoning officer's decision. The Court further recommends that other conduct by Board members taken in connection with the adjudication before the Board is likewise protected. Such conduct must be temporally bounded by the date plaintiff instituted the appeal, apparently

13

September 21, 2007, and the date the Board announced its decision, apparently December 19, 2007. However, the defense shall not extend to any claim connected to the alleged correspondence running from the Board or Defendant Nenichka through their attorney (Frank J. Artiz, Esq.) to plaintiff and others seeking "business licences" and "cosmetology licenses" and any threats to issue a subpoena against plaintiff in regard to the sought after material. As a matter of first impression, it appears that this request was not judicial in character and was issued absent any jurisdiction under the relevant state statutes. Defendants make no effort in their brief to put forward legal authority which would establish that the request for the sought after material, made (allegedly) after all evidence and testimony had been presented to the Board, had any jurisdictional basis or related in any way to a zoning adjudication. Just as one might conclude that a traffic court awarding a divorce acts in complete absence of jurisdiction, one might fairly conclude that a zoning board threatening to bring a subpoena in regard to a professional license acts in complete absence of jurisdiction.

### C. Procedural Due Process

Defendants argue that Pennsylvania provides for state judicial review of zoning board actions. Such review is presumptively reasonable and,

14

thereby, satisfies any procedural due process claim brought by a party seeking to overturn board action, without regard to whether the claimant actually attempts to make use of the judicial review remedy.

Plaintiff argues that her procedural due process rights were violated by the host of errors and lapses allegedly committed by the Board, the zoning officer, and those acting with them, including, for example, Artiz. Plaintiff concludes her procedural due process argument by noting that she took an appeal to the Board and the "Zoning Hearing Board did not act in the capacity of an impartial body, but, rather, actively and aggressively worked with the Zoning Officer in order to close Plaintiff's beauty salon." Opposition Brief at 16.

Defendants have the better argument. The Third Circuit has held:

> In order to establish a violation of his right to procedural due process, DeBlasio, in addition to proving that a person acting under color of state law deprived him of a protected property interest, must establish that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process. *Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir.1991) (citation omitted). As we observed in *Bello* [*v. Walker*, 840 F.2d 1124 (3d Cir.1988)], a state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body. *Bello*, 840 F.2d at 1128 (citations omitted). In other words, when a state "affords a full judicial mechanism with which to challenge the administrative decision" in question, the state provides adequate procedural due process, *id.*, whether

15

or not the plaintiff avails him or herself of the provided appeal mechanism. *Midnight Sessions*, 945 F.2d at 682.

*DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995) (footnotes omitted), *abrogated on other grounds United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Penn.*, 316 F.3d 392 (3rd Cir. 2003). It follows that where, as here, a state judicial review of administrative action is authorized, no procedural due process claim exists, at least, absent some defect or inadequacy in the judicial review process. Because no such inadequacy is put forward here, plaintiff's procedural due process claim fails.

### D. Substantive Due Process

The legal standard for adjudicating a substantive due process claim under Section 1983 is well known.

> Section 1983 provides remedies for deprivations of rights established by the Constitution, including substantive due process under the Fourteenth Amendment. *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir.2006). "To state a §1983 claim, a plaintiff must demonstrate the defendant, acting under color of state law, deprived [plaintiff] of a right secured by the Constitution or the laws of the United States." *Kaucher*, 455 F.3d at 423 (citing *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999)). Accordingly, "[t]he first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d

16

Cir. 2000) (en banc) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)). Furthermore, "the core of the concept [of due process is] protection against arbitrary action" and "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 845-46, 118 S. Ct. 1708; *see also United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003). The Supreme Court has consistently "spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Lewis*, 523 U.S. at 846, 118 S. Ct. 1708; *see also United Artists*, 316 F.3d at 399.

*Chainey v. Street*, 523 F.3d 200, 218-19 (3d Cir. 2008). More specifically, in the context of a dispute over land use: "Plaintiffs must allege facts demonstrating that the [defendant's] conduct was arbitrary, irrational, or motivated by constitutionally impermissible factors. In addition, a plaintiff asserting that a municipal land use decision violated substantive due process must show that the defendants' conduct 'shocks the conscience.'" *Development Group, LLC v. Franklin Twp. Bd. of Supervisors*, Civ. A. No. 03-2936, 2003 WL 22358440, at \*5 (E.D. Pa. 2003).

Defendants argue that the litany of alleged legal errors and wrongs put forward in the complaint, even if arbitrary, do not "shock the conscience" and, therefore, the substantive due process claim must be dismissed. Furthermore, plaintiff does not allege in her complaint that defendants engaged in the wrongful conduct in order to interfere with otherwise constitutionally protected

17

activity, or that the alleged wrongdoing arose as a result of animus directed against some ethnic group, or in order to effectuate an unconstitutional taking. Nor does plaintiff allege in her complaint corruption or self-dealing by defendants. *But see* Opposition Brief at 9 (alleging self-dealing by defendant Perhach; an allegation not appearing in the complaint). In these circumstances, it appears that the vast majority of the legal wrongs allegedly committed by defendants were wrongs that should and could have been corrected by appeal. For example, defects in notice is a normal issue for appeal. To allow for a remedy here would turn federal district court into "super zoning tribunals," when their function in a Section 1983 is to remedy arbitrary executive action of the "most egregious" type. *[Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir 2004)](https://...)*. Most of the conduct described by plaintiff may have been arbitrary, but it was hardly shocking.

However, one allegation put forward by plaintiff would, if proven, shock the "judicial conscience." *Id.* Plaintiff alleges: "That, all of the actions of Defendants, individually and in concert and conspiracy with each other, were undertaken deliberately, knowingly, and wilfully with the express intention and purpose of depriving Plaintiff of her rightful use of the property" under governing law. Complaint at 14. (Doc. No. 1 at 14.) Thus plaintiff is alleging

more than legal error by defendants, more than illegal or arbitrary conduct, but, rather, plaintiff is alleging that defendants knowingly violated the zoning law in order to deprive plaintiff of her rights. *Id.* Such allegations could shock the judicial conscience, and, indeed, other jurists have been shocked by similar allegations. *See, e.g.*, *Lonzetta Trucking & Excavating Co. v. Hazle Twp. Zoning Hearing Bd.*, Civ. A. No. 3:02-0018, slip op. 10 (M.D. Pa. Mar. 15, 2004) (Blewitt, M.J.) (report and recommendation) (Dkt. No. 67), *adopted by id.* (June 9, 2004) (Jones, J.) (Dkt. No. 88) (holding that plaintiff's allegations sufficiently state a substantive due process claim where it is alleged that defendants issued a cease and desist order "while fully aware that [the] quarry complied with existing zoning regulations").

For the reasons elaborated above the Court will not recommend dismissing the substantive due process claim.

## IV. CONCLUSION

For the reasons elaborated above, the Court **RECOMMENDS GRANTING** the Motion in part, and **DENYING** the Motion in part. Specifically, the Court recommends:

(1) **DISMISSING** the punitive damages claim against the municipal

entities;

(2) **DISMISSING** the procedural due process claim;

and,

(3) **GRANTING** absolute judicial immunity to the Board members in regard to their conduct at the hearing in which plaintiff sought an appeal of the zoning officer's decision. The Court further recommends that other conduct by Board members taken in connection with plaintiff's adjudication before the Board should be likewise protected. Such conduct must be temporally bounded by the date plaintiff instituted the appeal, and the date the Board announced its decision. However, the Court does **NOT RECOMMEND** extending this defense to any claim connected to the alleged correspondence running from the Board or Defendant Nenichka through their attorney (Frank J. Artiz, Esq.) to plaintiff and others seeking "business licences" and "cosmetology licenses" and any threats to issue a subpoena against plaintiff in regard to the sought after material.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated: June 30, 2009**
O:\shared\REPORTS\2008 Reports\08-1720-01.wpd